UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TOBIAS DARDEN,

                    Plaintiff,

          -against-

THE COUNTY OF SUFFOLK, THE SUFFOLK
COUNTY POLICE DEPARTMENT, SERGEANT
JOHN DOE 1 *in his official and individual capacity,*
POLICE OFFICERS JOHN/JANE DOES #1-10 *in
their official and individual capacities*, GOOD
SAMARITAN UNIVERSITY HOSPITAL, ER
DOCTOR JOHN/JANE DOE 1 ER NURSES,
JOHN/JANE Does #1-5, RADIOLOGIC
TECHNOLOGIST JOHN/JANE DOE #1-2, *in their
official and individual capacities*,

                    Defendants.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

2:21-CV-05132 (OEM) (ST)

**ORELIA E. MERCHANT, United States District Judge:**

      On September 14, 2021, Plaintiff Tobias Darden ("Plaintiff" or "Darden") commenced this

action, filing a complaint *pro se* against four pseudonymous police officers. *See* Complaint at 2-

3. Plaintiff filed an amended complaint on July 10, 2023, bringing claims against County of

Suffolk (the "County"), the Suffolk County Police Department (the "SCPD"), Sergeant John Doe

1, Police Officers John/Jane Does #1-10, (collectively, the "SCPD John Does"), Good Samaritan

University Hospital ("Good Samaritan"), ER Doctor John/Jane Doe 1, ER Nurses John/Jane Does

#1-5, and Radiologic Technologist John/Jane Does #1-2 (collectively, the "Medical John Does,"

together with the County, the SCPD, the SCPD John Does, and Good Samaritan, "Defendants").

Before the Court is Good Samaritan's motion for judgment on the pleadings, filed on January 22,

2024, and Plaintiff's second motion for leave to file an amended complaint, filed December 14,

2023.  For the reasons that follow, Good Samaritan's motion for judgment on the pleadings is **GRANTED** and Plaintiff's second motion for leave to file an amended complaint is **DENIED** without prejudice.

### BACKGROUND

Plaintiff is a resident of Suffolk County, New York who was pulled over by a SCPD officer on July 11, 2020.  Amended Complaint ("Am. Compl."), ECF 19 at 4.  Plaintiff alleges that, during the stop, SCPD officers found "a small quantity of marijuana" in Plaintiff's driver's side door and began to search Plaintiff and his car.  *Id*. at 5-6.  Plaintiff alleges that after SCPD officers found nothing further, they "used their legs to bring [Plaintiff] to the ground," "tased [Plaintiff]" twice, and handcuffed him.  *Id*. at 6-7.  Plaintiff alleges that an SCPD officer then "pulled down [Plaintiff's sweat pants looked at [Plaintiff's] genitals and then […] takes his fingers and swipes his fingers up and down [Plaintiff's] buttocks" three times.  *Id*. at 7.  Plaintiff alleges that an SCPD officer then accused him of swallowing something, saying "YOU SWALLOWED IT, WHAT'S THE MATTER WITH YOU MAN, YOU SWALLOWED IT, LOOK WHAT YOU DID."  *Id*. at 8.

SCPD officers next allegedly transported Plaintiff to Good Samaritan in West Islip, New York, performing another search of Plaintiff's genitals and buttocks "about 50ft away from the driveway to the hospital."  *Id*.  At Good Samaritan, Plaintiff was allegedly accompanied at all times by two SCPD officers and "forced to undergo x-rays as requested by Defendants to see if there were any drugs in his body."  *Id*. at 9.  Plaintiff alleges that "[t]his x-ray confirmed that Plaintiff did not have a foreign body secreted in his abdomen."  *Id*.  An emergency room doctor then allegedly gave Plaintiff an unknown liquid medication while Plaintiff "tried to explain to the

[doctor] that he had been beaten up and fondled by the defendants." *Id*. Plaintiff alleges that he was not allowed to finish this conversation and was not examined for his injuries. *Id*. at 10.

Plaintiff was then allegedly taken from Good Samaritan to the SCPD's First Precinct, placed under arrest for unlawful possession of marijuana, resisting arrest, and aggravated unlicensed operation of a motor vehicle, and given a traffic violation of driving without a seatbelt. *Id*. Plaintiff was then released. *Id*. Plaintiff alleges that "[a]ll Defendants [were] acting under color of law," *id*. at 11, and brings claims pursuant to 42 U.S.C. § 1983 ("§ 1983") against all Defendants and brings negligence claims against Good Samaritan and the Medical John Does.

## DISCUSSION

### I.   Good Samaritan's Motion for Judgment on the Pleadings

#### A. Legal Standard

"In deciding a Rule 12(c) motion [for judgment on the pleadings], we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. A complaint will only be dismissed under Rule 12(c) if it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief." *Byrd v. City of New York*, 04- CV-1396-, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) (cleaned up). "To survive a motion to dismiss [under rule 12(b)(6)], Plaintiff's complaint must meet the *Iqbal-Twombly* pleading standard and 'must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.''" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**B. Plaintiff's § 1983 Claims**

Plaintiff brings a variety of claims against Good Samaritan pursuant to § 1983, which provides that "every person who, under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. A plaintiff bringing a § 1983 claim "must show both that he has been [1] deprived of a right secured by the 'Constitution and laws' of the United States and [2] that the defendant acted 'under color of any statute ... of any State.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982) (cleaned up).

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988). "State action may properly be found where the state exercises coercive power over, is entwined in [the] management or control of, or provides significant encouragement, either overt or covert, to, a private actor, or where the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies." *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 313 (2d Cir. 2003), *cert. denied*, 539 U.S. 942, 123 (2003) (cleaned up).

These methods of finding state action by nominally private persons have been categorized into three main tests: compulsion, joint action, and public function. *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) ("For the purposes of section 1983, the actions of a nominally private

entity are attributable to the state ... (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test')."). Plaintiff "bears the burden of proof on the state action issue." *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1083 n.3 (2d Cir. 1990), *cert. denied*, 499 U.S. 960 (1991). "As a general rule, private hospitals do not act under the color of law for § 1983 purposes." *Doe v. Rosenberg*, 996 F.Supp. 343, 356 (S.D.N.Y. 1998).

Good Samaritan contends that it was not acting under color of law pursuant to any of these three tests. Plaintiff concedes that "[a] private physician is not ordinarily a state actor under the compulsion, joint action or public function test," but nevertheless argues that in this instance Good Samaritan was functioning as a state actor under all three tests. *See* Plaintiff's Opposition to Good Samaritan's Motion for Judgment on the Pleadings ("Opp.") at 9-17. The Court addresses each test separately.

### 1. Compulsion Test

Plaintiff contends that Good Samaritan was a state actor pursuant to the compulsion test because "[b]ut for doing the bidding of Defendant Officers, [Good Samaritan] did not have any medical basis or reason to treat or examine [Plaintiff]." *Id*. at 11. Plaintiff contends that Good Samaritan staff only examined Plaintiff because the "Defendant Officers provided such significant encouragement" to Good Samaritan staff that they "felt compelled and agreed to violate [Plaintiff]." *Id*.

Private decisions may be considered state action for § 1983 purposes where the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

Despite Plaintiff's assertions to the contrary in his opposition papers, Plaintiff's amended complaint is devoid of any indicia that the SCPD exerted "coercive power" over Good Samaritan staff or engaged in "such significant encouragement […] that the choice must be in law deemed to be that of the State." *Id*.  To the contrary, Plaintiff's complaint describes SCPD officers conveying to Good Samaritan staff that they suspected Plaintiff had ingested drugs during the traffic stop and "requested" that Plaintiff undergo an x-ray.  Am. Compl. at 9.  Plaintiff does not make any allegations that SCPD officers threatened, badgered, or in any other way compelled Good Samaritan staff to provide Plaintiff with an x-ray.  Under these circumstances, with ample reason for Good Samaritan staff to perform a diagnostic x-ray to ensure Plaintiff was not at risk of a medical crisis from ingested narcotics, Plaintiff has not carried his burden in pleading state compulsion.

### 2.   *Joint Action/Close Nexus Test*

Under the joint action test, a private actor may engage in state action for § 1983 purposes when "when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies." *Fabrikant*, 691 F.3d at 207.  "To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Bang v. Utopia Rest.*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996).

"Put another way, '[a] nexus of 'state action' exists between a private entity and the state when the state ... is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert ... or is entwined with governmental policies.'" *Colabella v. Am. Inst. of Certified Pub. Accts.*, 10-CV-2291 (KAM) (ALC), 2011 WL 4532132, at \*12 (E.D.N.Y. Sept. 28, 2011) (quoting *Flagg v. Yonkers Savs. and Loan Ass'n, FA*, 396 F.3d 178, 187 (2d Cir.2005)). "However, generalized or conclusory allegations of conspiracies are insufficient to sustain a section 1983 claim, and complaints that lack further specificity or 'specific instances of misconduct' are subject to dismissal." *Vazquez v. Combs*, 04-CV-4189 (GEL), 2004 WL 2404224, at \*3 (S.D.N.Y. Oct. 22, 2004).

Plaintiff contends that Good Samaritan staff and SCPD officers "shared a common unlawful goal of performing an extremely invasive body cavity search against Mr. Darden's will and consent," and alleges that Good Samaritan and the SCPD were engaged in a symbiotic relationship such that the SCPD had "so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." Opp. at 13-14 (quoting *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961)).

These allegations are not borne out in Plaintiff's complaint. As an initial matter, Plaintiff does not allege in his complaint that Good Samaritan had any involvement with any body cavity searches of Plaintiff, which he alleges took place entirely outside of the hospital. *See* Am. Compl. at 7-8. Moreover, nothing in Plaintiff's complaint suggests that the SCPD and Good Samaritan shared a common goal: the mere allegation that Good Samaritan staff x-rayed Plaintiff after SCPD officers told them Plaintiff may have ingested narcotics is not any more indicative of a common plan to violate Plaintiff's rights than it is indicative of hospital staff attempting to address a potential medical emergency. Nor does Plaintiff in any way allege that the "unknown liquid

7

medication" given to Plaintiff was administered on the behest of the SCPD. *Id*. at 9. Based on the allegations in Plaintiff's amended complaint, Plaintiff has not carried his burden in alleging joint action such that Good Samaritan may be considered a state actor.

### 3. *Public Function Test*

Pursuant to the public function test, a plaintiff may allege a private entity engaged in state action "when the entity has been delegated a public function by the state." *Fabrikant*, 691 F.3d at 207. The Supreme Court has held that, in assessing the public function test, "the relevant question is not simply whether a private group is serving a 'public function' […] [T]he question is whether the function performed has been 'traditionally the exclusive prerogative of the State.'" *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1983).

Plaintiff briefly addresses this point in his opposition, contending that "[i]n this case, the court must review whether the Hospital's body cavity search was a function that is traditionally under the exclusive authority of the police officers. The Hospital was not acting under their medical authority since they had no reason to receive Mr. Darden to the hospital for his own safety without a medical cause of examination." Opp. at 17.

Again, however, Good Samaritan staff indeed did have a reason to provide Plaintiff with an x-ray for his own safety: it had been suggested that Plaintiff may have ingested an unknown quantity of narcotics immediately prior to his admission. Providing diagnostic medical care to Plaintiff under these circumstances is not a function that has been traditionally the exclusive prerogative of the State. *See, e.g., Schlein v. Milford Hosp., Inc.*, 561 F.2d 427, 429 (2d Cir. 1977) ("Although the activities of [private hospital] are clearly 'affected with a public interest' the functions performed by it have not been 'traditionally associated with sovereignty,' and have long been relegated to the private domain, rather than treated as 'traditionally the exclusive

prerogative of the State.'"); *Kavazanjian v. Rice*, 03-CV-1923 (FB), 2008 WL 5340988, at *12 (E.D.N.Y. Dec. 22, 2008) ("Providing isolated emergency treatment to a prisoner on equal terms with the general public […] does not constitute state action.").  Therefore, Plaintiff has failed to carry his burden in adequately alleging that Good Samaritan was performing a public function for § 1983 purposes.

Because Plaintiff has failed to adequately allege that Good Samaritan was engaged in state action pursuant to the compulsion test, the joint action test, or the public function test, Plaintiff's § 1983 claims against Good Samaritan are hereby dismissed.

### B.  State Law Claim

Plaintiff's remaining claim against Good Samaritan, Plaintiff's eleventh cause of action, is labeled in the amended complaint as "negligence."  Am. Compl. at 28.  In this claim, Plaintiff contends that "as Plaintiff was placed under the medical care of" Good Samaritan, Good Samaritan "owed Plaintiff a duty of reasonable care, including reasonable medical care."  Plaintiff contends that Good Samaritan breached this duty in "not treat[ing him] for any medical condition, despite his attempt to advise hospital staff of his need to have such treatment" and in "testing and invasively using x-ray machines to look into Mr. Darden's body."  *Id*. at 28.  In his opposition, Plaintiff contends that he has brought "Negligence, Medical Mal-Practice and Federal Claims against [Good Samaritan]."  Opp. at 22.

For the purposes of determining the appropriate statute of limitations for Plaintiff's claim, this Court must determine whether the substance of his claim sounds in medical malpractice or in regular negligence.  *See, e.g., Scott v. Uljanov*, 74 N.Y.2d 673, 674–75 (1989) ("In that medical malpractice is simply a form of negligence, no rigid analytical line separates the two, although for policy reasons the Legislature has chosen to affix different Statutes of Limitations to medical

9

negligence (or malpractice) and negligence generally. Conduct may be deemed malpractice, rather than negligence, when it 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician.'  On this record, we agree with the Appellate Division dissenters that, for purposes of determining the applicable Statute of Limitations, defendant hospital's alleged wrongdoing must be characterized as medical malpractice rather than negligence.") (cleaned up).

Though Plaintiff contends in his opposition that he has distinct claims for regular negligence and medical malpractice, the substance of his eleventh cause of action belies this assertion.  Plaintiff's eleventh cause of action results entirely from "the rendition of medical treatment by a licensed physician" and therefore is, in substance, a medical malpractice claim rather than a regular negligence claim.  *Id*.

In New York, medical malpractice claims must be commenced within two years and six months of the act, omission, or failure complained of.  *See* N.Y.C.P.L.R. § 214-a ("An action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of.").  In its motion, Good Samaritan correctly notes that because Good Samaritan's treatment of Plaintiff took place on July 11, 2020, the statute of limitations for Plaintiff's medical malpractice suit expired on January 11, 2023.  Am. Compl. at 4. Plaintiff's amended complaint, wherein he first raised his medical malpractice claim against Good Samaritan, was filed on July 10, 2023.  *See generally* Am. Compl.  Accordingly, Plaintiff's eleventh cause of action must be dismissed as time barred.

Because Plaintiff's § 1983 claims against Good Samaritan fail to adequately allege state action, and because Plaintiff's remaining claim against Good Samaritan is time barred, Good Samaritan's motion for judgment on the pleadings is granted.

## II.   Plaintiff's Motion for Leave to Amend

Plaintiff seeks leave to amend his complaint "to amend the caption and substitute the unknown defendants." Memorandum of Law in Support of Plaintiff's Motion for Leave to Amend ("Amendment MOL"), ECF 34 at 3. The County filed a memorandum of law in opposition, "oppos[ing] only that branch of the motion that seeks to amend the complaint to name the "John Doe" and "Jane Doe" defendants […] pursuant to Fed. R. Civ. P. 15." County of Suffolk's Memorandum of Law in Opposition ("Suffolk Opp."), ECF 41 at 1.

The County argues that leave to amend would be futile, as Plaintiff's claims against the substituted parties would be time-barred under the 3-year statute of limitations for Section 1983 claims. *Id*. at 2. Plaintiff argues that the amendment would not be futile pursuant to N.Y. C.P.L.R. § 1024, which allows plaintiffs to substitute a real name for a John Doe after the statute of limitations has expired so long as plaintiffs "exercise due diligence, prior to the running of the statute of limitations, to identify the defendant by name" and where their original complaints "describe the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant." *Hogan v. Fischer*, 738 F.3d 509, 519 (2d Cir. 2013).

The County contends that Plaintiff has not adequately alleged due diligence, contending that Plaintiff "does not claim to have taken any identifiable steps to obtain the names prior to the County voluntarily providing them." Suffolk Opp. at 2. The County's characterization of Plaintiff's allegations is not entirely fair: in addition to conclusory allegations that Plaintiff "diligently sought to identify the John Doe defendants," Plaintiff makes a sole specific factual allegation that "upon information and belief" he "wrote multiple letters but his attempts were futile." Amendment MOL at 15-16. Nevertheless, this sole factual allegation, made "upon information and belief," without specifying to whom the letters were sent, on what dates, or what

11

the request made in the letters was, is insufficient to demonstrate that Plaintiff acted with due diligence. Courts in this Circuit require more specific factual allegations and evidence from plaintiffs before finding the due diligence prong of N.Y. C.P.L.R. § 1024 has been met. *See Joseph v. Bute*, 16-CV-2004 (PKC)(LB), 2019 WL 181302, at \*5 (E.D.N.Y. Jan. 9, 2019) (collecting cases) ("Indeed, Courts have found due diligence where plaintiffs, prior to filing their complaints in federal court, submitted discovery requests to the Attorney General's Office; made multiple inquiries to the relevant government department; or 'contacted an official to provide information about [the d]efendant's full identity.'").

Because Plaintiff fails to adequately allege that he acted with due diligence in seeking to identify the John Doe and Jane Doe defendants prior to the expiry of the statute of limitations, Plaintiff's motion for leave to amend is denied without prejudice. Though Plaintiff's instant motion for leave to amend is denied, Plaintiff is permitted to file a new motion for leave to amend with more specific factual allegations and evidentiary support.

## CONCLUSION

For the reasons set forth above, Good Samaritan's motion for judgment on the pleadings is granted and Plaintiff's motion for leave to amend is denied without prejudice.


**SO ORDERED.**

　　　　　　　　　　　　　　　　　　／s／　　　　　　　　　　　　　　　
ORELIA E. MERCHANT
United States District Judge


Dated: Brooklyn, New York
　　　　August 16, 2024

12