**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

TOBIAS DARDEN,

                                        Plaintiff,

-against-                                  **MEMORANDUM AND ORDER**

COUNTY OF SUFFOLK, et al.,                21-cv-5132 (OEM)(ST)

                                        Defendants.

**TISCIONE, United States Magistrate Judge:**

        On July 11, 2020, Tobias Darden ("Plaintiff") was pulled over and arrested by the Suffolk County Police Department ("SCPD"). All charges were subsequently dismissed. On August 25, 2021, Plaintiff sent a letter – while incarcerated for an unrelated matter – to the SCPD First Precinct requesting the identities of the officers involved in the July 11, 2020, arrest. On September 14, 2021, Plaintiff filed a complaint *pro se* – from jail – alleging civil rights violations incident to the July 11, 2020, arrest. SCPD, however, failed to relay the identities of the officers until September 29, 2023, after the statute of limitations expired.[1] Now before this Court is Plaintiff's second motion to amend and include the names of the previously unknown officers. This raises a distinct issue: whether Plaintiff's attempt to identify the unknown officers constitutes due diligence under New York Civil Practice Law and Rules ("CPLR") § 1024 to trigger the relation back doctrine. For the reasons set forth below, it does.[2]

---

[1] The initial disclosures were not received until October 6, 2023.

[2] "A magistrate judge's grant of a motion to amend a complaint is generally considered non-dispositive." *Gordon v. Tencent Music Entertainment Grp.*, 2021 WL 6113263, at *4 n.5 (E.D.N.Y. Dec. 27, 2021) (citing *Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, New York*, 2021 WL 4472852, at *8–9 (E.D.N.Y. Sept. 30, 2021); *Prosper v. Thomson Reuters Inc.*, 2021 WL 535728, at *1 n.1 (S.D.N.Y. Feb. 11, 2021)).

## JURISDICTION AND VENUE

This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Venue is appropriate in the Eastern District of New York pursuant to 28 U.S.C. § 1391, as all parties either reside or operate in Suffolk County.

## BACKGROUND[3]

### I. Parties

Plaintiff Tobias Darden is a New York resident.

Defendants are Suffolk County, SCPD, and several officers listed as Sergeant John Doe 1 and Police Officers John/Jane Does 1-10. The officers have since been identified.

### II. Factual Allegations and Procedural History

On July 11, 2020, Plaintiff was pulled over by two SCPD officers. Am. Compl. ¶ 14, ECF No. 19. The vehicle was owned by Plaintiff's friend. *Id*. SCPD claims Plaintiff was stopped for failing to wear a seatbelt, an allegation Plaintiff denies. *Id*. ¶ 15. Plaintiff claims the officers refused to provide a reason for the stop. *Id*. ¶ 19. The officers alleged to smell marijuana and requested Plaintiff exit the car. *Id*. ¶ 18. In searching the car, one of the officers identified a bag containing loose marijuana in the driver's side door. *Id*. ¶ 20. Plaintiff was patted down, and the vehicle was searched, but nothing further was found. *Id*. ¶¶ 20-24.

One of the officers asked Plaintiff to remove his shoes on the side of the road. *Id*. ¶ 24. Plaintiff refused. *Id*. Plaintiff alleges the officer "was livid that [Plaintiff] dared to challenge his authority. [His] face turned red and he charged at [Plaintiff and] yelled 'I GOT SOMETHING.'" *Id*. ¶ 25. Both officers "attacked by using their feet to kick [Plaintiff] to the floor." *Id*. ¶ 26. During the scuffle, Plaintiff ended up underneath the vehicle he was driving. *Id*. ¶ 28. One of the officers

---

[3] In giving background, this Court refers to the allegations contained in the Amended Complaint ("Am. Compl."). *See generally* ECF No. 19.

"placed his knee on [Plaintiff's] neck then pulled out his taser and tased [Plaintiff] on his right arm." *Id*. ¶ 29. The officer threatened to "turn it up a []notch . . . increased the voltage then proceeded to tase [Plaintiff] for a second time." *Id*. ¶¶ 30-31. Plaintiff lost consciousness. *Id*. ¶ 30.

Plaintiff was then dragged from underneath the vehicle, brought to his feet and moved to the back of a police vehicle. *Id*. ¶¶ 32-36. A third officer "pulled down [Plaintiff's] sweat pants looked at [Plaintiff's] genitals and then [took] his fingers and swipe[d] his fingers up and down [Plaintiff's] buttocks . . . three (3) times, and found nothing illegal." *Id*. ¶ 36. Plaintiff asked the officer "isn't this illegal[?] [S]houldn't this be done in private?" *Id*. ¶ 37. The officer replied "'WHAT,' [Plaintiff] continued saying 'what are you doing, I'm not in the precinct[;] how are you stripping me?'" *Id*. ¶ 38. The officer responded "'SHUT THE FUCK UP, YOU'RE IN HANDCUFFS[,] RIGHT? WE CAN DO WHATEVER WE WANT.'" *Id*. ¶ 39. The officers then accused Plaintiff of swallowing paraphernalia and brought him to Good Samaritan University Hospital in West Islip for an x-ray. *Id*. ¶¶ 41-42.

The officers, however, "stopped their vehicle about 50 [feet] away from the driveway to the hospital, opened the door and pulled [Plaintiff] out of the vehicle. [One officer] said 'Let me just make sure and check again' then he pulled [Plaintiff's] pants out a few inches in the front and once again fondled his genitals and buttocks." *Id*. ¶ 42.

Plaintiff was x-rayed with neither a warrant nor his consent. *Id*. ¶ 43. The x-ray did not reveal any paraphernalia in Plaintiff's stomach. *Id*. ¶ 45. Plaintiff alleges the officers attempted to stay in the room during his x-ray but were asked to leave by hospital staff. *Id*. ¶ 46. Plaintiff attempted to tell the nurses he had been injured and "fondled" during the arrest, but the officers interrupted, "that is not why you are here." *Id*. ¶ 50. Plaintiff was not checked for his arrest related injuries and was not permitted to speak with hospital staff confidentially. *Id*. ¶¶ 51-52.

Plaintiff was taken to the SCPD First Precinct, handcuffed to a desk for several hours, and placed under arrest for unlawful possession of marijuana, resisting arrest, aggravated unlicensed operation of a motor vehicle, and failure to wear a seatbelt. *Id*. ¶ 52. Plaintiff was issued tickets and released. *Id*. Importantly, all charges were dismissed as of October 1, 2021. *Id*. ¶¶ 61, 89.

Plaintiff was incarcerated in the Suffolk County Correctional Facility shortly after the arrest for an unrelated matter. From jail, Plaintiff took steps to identify the officers involved and filed the immediate action. On August 25, 2021, Plaintiff sent a letter from jail to the SCPD First Precinct requesting the officer's identities. Darden Letter, ECF No. 66-1. SCPD never responded to the request.[4]

On September 14, 2021 – while incarcerated – Plaintiff filed suit against Good Samaritan University Hospital, SCPD, and all officers involved alleging civil rights violations pursuant to 42 U.S.C. §§ 1981, 1983.[5] Plaintiff did not have access to his bank account, was unable to pay the filing fee, and on September 27, 2021, requested to proceed *in forma pauperis*. *See* ECF No. 4. The request was denied without prejudice. *See* ECF No. 6. On November 12, 2021, Plaintiff requested to pay the filing the fee from his inmate account or alternatively if the fee deadline could be held in abeyance until his release. *See* ECF No. 7. The request was denied, but Plaintiff was given a 30-day extension to pay the filing fee. *See* Order Dated November 22, 2021. Plaintiff was released from jail early 2022, retained counsel, and paid the filing fee.

Plaintiff filed an amended complaint on July 10, 2023. *See* ECF No. 19. On September 29, 2023, SCPD provided Plaintiff's counsel the identities of the officers with initial disclosures. *See* ECF No. 66-2. On December 14, 2024, Plaintiff moved to add the names of the previously

---

[4] The August 2021 letter references a prior request for the officers' identities Plaintiff made September 23, 2020. No direct evidence of the September 23, 2020, letter is attached.
[5] While Plaintiff was *pro se* at the time the complaint was filed and letter was sent, he is now represented by counsel.

unknown officers to the complaint. *See* ECF No. 34. On August 16, 2024, Judge Merchant denied Plaintiff's second motion to amend with leave to amend with more specific factual allegations and evidentiary support. *See* ECF No. 51.[6] On August 26, 2025, Plaintiff filed his renewed second motion to amend. *See* ECF No. 66. The motion was referred to this Court.

## **LEGAL STANDARD**

Courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Coniglio v. Cucuzza,* 345 F.R.D. 372, 377 (E.D.N.Y. 2024) (citing *Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) (leave to amend is in the court's discretion)). Doing so "encourages courts to determine claims 'on the merits' rather than disposing of claims or defenses based on 'mere technicalities.'" *Exec. Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 366 (N.D.N.Y. 2021) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000)).

"Leave to amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citation and quotation marks omitted).

Motions to add parties "are afforded [the] 'same standard of liberality afforded to motions to amend pleadings.'" *Hussain v. Burton & Doyle of Great Neck LLC*, 14-cv-5924 (LDW) (SIL), 2015 WL 13227997, *2 (E.D.N.Y. Sept. 29, 2015), *report and recommendation adopted*, 2016 WL 8711393 (E.D.N.Y. Feb. 26, 2016) (citing *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 79 (E.D.N.Y. 2011)); *see* Fed. R. Civ. P. 21. There is "little practical difference" between motions to

---

[6] Judge Merchant's August 16, 2024, Order also dismissed Good Samaritan University Hospital from the case.

add parties and motions to amend, "since they both leave the decision whether to permit or deny an amendment to the district court's discretion." *Amaya*, 285 F.R.D. at 253.

"In general, district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000). "[T]he party opposing the amendment has the burden of establishing that leave to amend would be unduly prejudicial or futile." *Pilkington N. Am., Inc v. Mitsui Sumitomo Ins. Co. of Am.*, 2021 WL 4991422, *5 (S.D.N.Y. Oct. 27, 2021) (citations omitted). Accordingly, the "party opposing a motion to amend bears the burden of establishing that the amendment should be denied." *Hussain*, 2015 WL 13227997, *2; *see also United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 567 F. Supp. 3d 429, 438 (S.D.N.Y. 2021).

## DISCUSSION

### I. Relation Back Doctrine

"[I]n New York, the statute of limitations for Section 1983 claims is . . . three years." *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 108 (2d Cir. 2023) (citations omitted). Here, the traffic stop occurred on July 11, 2020. Am. Compl. ¶ 14. Accordingly, the statute of limitations expired July 11, 2023. Plaintiff filed his second motion to amend on December 14, 2023 – seven months after the expiration of the statute of limitations.

Generally, a motion to amend will be denied as futile "if the claims sought to be added are barred by the relevant statute of limitations." *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 397 (E.D.N.Y. 1998). Nevertheless, "an otherwise time-barred claim may be deemed timely based on the 'relation back' doctrine." *Id*; (citing Fed R. Civ. P. 15); *see also VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001) ("the amended complaint is not time barred if it 'relates back' to a timely filed complaint."). The relation back doctrine controls "when an amended

pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010).

Plaintiff moves under Rule 15 (C)(1)(A) which permits late amendments where "the law that provides the applicable statute of limitations allows relation back[.]" Fed. R. Civ. P. 15 (C)(1)(A). Controlling here, the CPLR "creates a special procedure for claims alleged against John Doe defendants." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). That special procedure is CPLR § 1024 which reads:

> A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly.

Importantly, "New York courts have interpreted this section to permit John Doe substitutions *nunc pro tunc*[,]" i.e., relating back to the time of the filing. *Hogan*, 738 F.3d at 518–19 (collecting cases).

To utilize CPLR § 1024, a party must meet two requirements: (1) the plaintiff must "exercise due diligence, prior to the running of the statute of limitations, to identify the [unknown] defendant;" and (2) the unknown defendant must "be described in such form as will fairly apprise the party that she is the intended defendant." *Bumpus v. New York City Transit Auth.*, 66 A.D.3d 26, 29 (2009) (citations omitted). The question before this Court is whether Plaintiff's August 25, 2021, letter satisfies CPLR § 1024. It does.

The circumstances following Plaintiff's arrest are paramount to this Court's decision. The arrest occurred July 11, 2020. Shortly thereafter, Plaintiff was incarcerated for an unrelated matter. On August 25, 2021, Plaintiff sent a letter – from jail – to the SCPD First Precinct requesting "the

names of the officer[s] that w[]ere involved in docket No: CR-018382-2050 / NO: CR-018383-2050 / Central Complaint No: 20-340200 / 20-339707 *or already investigated like I asked in my previous letter.*" (emphases added). *See* Darden Letter. The letter references a prior attempt to obtain the officers' identities on September 3, 2020, however no direct evidence of the prior letter is attached. The letter also contains an unmistakable indication of pending litigation, reading "[i]f this matter can be resolved before I put in a civil lawsuit, I can be located at the Riverhead [Correctional] facility." *Id*. Notably, the letter was sent two years prior to the expiration of the statute of limitations. Plaintiff's complaint was filed September 14, 2021.

Plaintiff's August 2021 letter was never acknowledged by nor responded to. Indeed, SCPD did not give Plaintiff the names of the officers until September 29, 2023, as part of initial disclosures following an order from this Court. This timeline reveals SCPD waited until the statute of limitations ran before giving Plaintiff the information necessary to file a timely motion.

CPLR § 1024 requires the plaintiff to make "timely efforts to identify the correct party *before the statute of limitations expired.*" *Joseph v. Bute*, 2019 WL 181302, at *5 (E.D.N.Y. Jan. 9, 2019) (citations and quotation marks omitted) (emphases added); *see also Justin v. Orshan*, 14 A.D.3d 492, 492-93 (2005) ("a plaintiff must show that he or she made timely efforts to identify the correct party before the statute of limitations expired."). Plaintiff's letter was sent nearly two years before the statute of limitations expired. Such constitutes a timely effort.

SCPD argues Plaintiff's letter does not constitute due diligence. To the contrary, such can be accomplished through "submitting informational inquiries to government officials to obtain information about the defendant's identity." *Pierre v. Cnty. of Nassau*, 2022 WL 2872651, at *7 (E.D.N.Y. July 21, 2022).

This Court is further persuaded by Plaintiff's *pro se* status and incarceration at the time of the request. Courts of this Circuit have recognized such limitations when determining due diligence. For example, in *Colson v. Mingo*, the court found due diligence satisfied where the plaintiff was "an incarcerated person proceeding *pro se* for the first several months of [] litigation [and] may have been understandably limited in the efforts he could make to identify the John Does." 2025 WL 218520, at *9 (S.D.N.Y. Jan. 16, 2025). Like here, the defendants in *Colson* waited until two years after the statute of limitations expired to identify the John Does. *Id*. The *Colson* court found due diligence even though "the docket [did] not reflect any extraordinary effort on Plaintiff's part to identify the John Does." *Id*. Likewise, in *Williams v. Hughes*, the court found due diligence satisfied where "Plaintiff, proceeding *pro se* and as an incarcerated individual . . . took steps to uncover the unknown officer's identity within the limitations period." 2024 WL 5239048, at *4 (S.D.N.Y. Dec. 27, 2024); *see also Kennedy v. City of New York*, 2015 WL 6442237, at *5 (S.D.N.Y. Oct. 23, 2015) (finding due diligence "[g]iven [plaintiff's] *pro se* status[.]").

Plaintiff made his request two years before the statute of limitations expired from a jail cell and without an attorney. As such, "any delay . . . was a direct result of his misunderstanding of the legal system or his lack of access to the proper facilities while incarcerated, and not due to any flippancy as to the time constraints." *Medina v. Seiling*, 2018 WL 1603857, at *7 (S.D.N.Y. Mar. 29, 2018) (holding due diligence was met).[7]

True, "courts have held that where there is no indication in the record that a plaintiff has exercised due diligence prior to the expiration of the statute of limitations, a plaintiff is not entitled to make use of the 'John Doe' procedure provided in CPLR § 1024." *Ceara v. Deacon*, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014). Indeed, the Southern District of New York "typically find[s] a lack

---

[7] This is consistent with historic precedent of adopting an attitude of leniency toward *pro se* litigants. *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008); *Brownell v. Krom*, 446 F.3d 305, 309 (2d Cir. 2006).

of due diligence *only* where the plaintiff failed to take any action beyond filing his original complaint prior to the expiration of the statute of limitations." *Abreu v. City of New York*, 2018 WL 3315572, at *5 (S.D.N.Y. July 5, 2018) (citation and quotation marks omitted) (emphasis added).

But such is not the case here. The present facts are distinguishable from cases like *Jones v. City of New York*, where an incarcerated *pro se* litigant waited until two weeks prior to the statute of limitations to file suit and took no action to identify the John Does. 571 F. Supp. 3d 118, 131 (S.D.N.Y. 2021); *see also Liverpool v. Davis*, 442 F. Supp. 3d 714, 726 (S.D.N.Y. 2020) (same). This is not a case where plaintiff "did nothing to exercise due diligence prior to the running of the statute[.]" *Vasconcellos v. City of New York*, No. 12 CIV. 8445 CM, 2014 WL 4961441, at *9 (S.D.N.Y. Oct. 2, 2014). While "[t]he onus of identifying an officer defendant's name, or at least making a good faith effort, lies on the plaintiff[,]" such an effort was made here, from a jail cell, without an attorney, during the height of the Covid-19 pandemic. *Barrett v. City of Newburgh*, 720 F. App'x 29, 33 (2d Cir. 2017).

SCPD relies on *Sherman v. Thomas-Brown* to support the argument that "[a] party generally cannot satisfy the due-diligence requirement by making a single unsuccessful request for information." 2018 WL 1247377, at *5 (E.D.N.Y. Mar. 9, 2018). *Sherman*, however, stands in contrast to the facts before this Court. There, the plaintiff – who was in a wheelchair and carried a colostomy bag – sued the Transit Security Administration ("TSA") for an incident arising from a pre-flight screening. *Id*. The plaintiff alleged "TSA agents detained her in a private room, 'strip-searched' her, and closely inspected her colostomy bag, thereby violating both TSA policy and her Fourth Amendment right to be free from unreasonable search and seizure." *Id*. at *1. The plaintiff then sent a single Freedom of Information Act ("FOIA") request on January 23, 2012, requesting the identities of the TSA agents. *Id*. at *2. The plaintiff filed suit nearly three-years later – four-

days prior to the expiration of the statute of limitations. The plaintiff filed an amended complaint including the officers' names four years after the incident and one year after the statute of limitations had run. The court dismissed claims against the TSA officers individually for failure to exercise due diligence prior to the statute of limitations. Importantly, the court reached its conclusion because the plaintiff "waited until the 'eleventh hour' to file her complaint, and was not impeded by any extraordinary circumstances." *Id*. at *6. SCPD's reliance on *Sherman* ignores the extraordinary circumstances here where a *pro se* incarcerated Plaintiff filed suit nearly two years prior to the expiration of the statute of limitations and at the height of the Covid-19 pandemic.

It should also be noted that while Defendants take the position they never received an earlier letter from Plaintiff asking for the names of the officers involved in his arrest, Plaintiff maintains that he did, in fact, send two separate letters requesting the information. The second letter, for which there is a record and Defendants acknowledge receiving, clearly references the earlier letter. Thus, it seems highly likely that Plaintiff at least sent the first letter, even if Defendants can find no evidence they received it. It would make no sense for Plaintiff to refer to prior communications in his letter if they did not occur, since this happened well before the statute of limitations expired and before Plaintiff even filed suit. In other words, it defies logic to assume that Plaintiff never sent the first letter and only referenced it in the second letter to manufacture some type of statute of limitations defense for a future cause of action that he had yet to assert. The more reasonable conclusion, certainly at this stage of the proceedings, is to find that Plaintiff made two separate attempts to ascertain the names of the relevant officers well before the statute of limitations expired.

Moreover, to the extent SCPD argues Plaintiff's request(s) came before the complaint, such does not defeat due diligence. Indeed, "courts have found due diligence where plaintiffs, *prior to*

*filing their complaints*, submitted discovery requests[.]" *Abreu*, 2018 WL 3315572, at *5 (citing *Hogan*, 738 F.3d at 518) (emphases added).

This Court is satisfied Plaintiff took adequate steps to identify the unknown officers prior to the expiration of the statute of limitations. Plaintiff was in prison during the height of the Covid-19 pandemic and still managed – as a *pro se* party – to send at least one (and probably two) handwritten letter to the SCPD First Precinct requesting the identities of the officers involved in his arrest. Due diligence is satisfied.

As to the second prong, the letter provides adequate information to identify the officers. Plaintiff requested "the names off the officer[s] that were involved in docket No: CR-018382-2050 / NO: CR-018383-2050 / Central Complaint No: 20-340200 / 20-339707 *or already investigated like I asked in my previous letter.*" (emphases added). *See* Darden Letter. Such information was readily available to SCPD, as a mere cursory review of the criminal complaints reveals the names of all officers involved in the arrest.

"[P]hysical descriptions are not the only means through which a plaintiff may adequately put an intended defendant on notice." *Kennedy v. City of New York*, 2015 WL 6442237, at *5 (S.D.N.Y. Oct. 23, 2015). To be sure, "specific contextual information . . . may satisfy the description requirement of [CPLR] 1024." *Id*. For example, in *Gudanowski v. Burrell* the court found the description was sufficient where "the original complaint did not describe defendants' appearances, [but] alleged the date and time of the incident, and that the intended defendants were New York State Troopers and East Rutherford Police Officers." 2021 WL 3887612, at *5 (S.D.N.Y. Aug. 31, 2021); *see also Abreu*, 2018 WL 3315572, at *6 (collecting case) (CPLR § 1024 description requirement "not particularly arduous."). The context provided here – i.e. criminal docket numbers – is sufficient.

## II. Equitable Tolling

Although not raised by either party, a brief discussion of equitable tolling is appropriate. To reiterate, Plaintiff requested the officers' identities in August 2021 and did not receive the information until October 2023.

"Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000). Equitable tolling is derived from the judiciary's inherent equity power to "relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules." *Holland v. Florida*, 560 U.S. 631, 650 (2010); *see also Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 108 (2d Cir. 2013). Generally, equitable tolling barres a statute of limitations defense where the plaintiff has actively pursued their rights and was prevented from bringing a timely cause of action due to special circumstances. *See* Restatement (Third) of Torts: Miscellaneous Provisions § 8 TD No 3 (2024).

The Second Circuit permits equitable tolling where a plaintiff is unable to obtain necessary information to bring a timely cause of action. *See Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002). Importantly, while there is no indication SCPD acted to conceal the identities of the officers, "equitable tolling is not limited to [fraud]." *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 183 (2d Cir. 2008). The Second Circuit has explicitly "rejected the position that equitable tolling is permissible only in misconduct cases." *Canales v. Sullivan*, 936 F.2d 755, 758 (2d Cir. 1991). Equitable tolling "does not assume a wrongful—or any—effort by the defendant to prevent the plaintiff from suing. *Id*. at 182 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)).

However, there must be "special circumstance[s]" to permit equitable tolling *Valdez*, 518 F.3d at 183. Special circumstances have been found where defendants failed to follow regulations requiring defendants to inform claimants of their right to sue, *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004), and where defendants failed to inform claimants that seemingly private doctors were *de jure* federal employees *Valdez*, 518 F.3d at 183.

Special circumstances may be present here considering the facts surrounding Plaintiff's request, i.e., inability to access information in SCPD's possession, *pro se* status, incarceration, and the Covid-19 pandemic. Nevertheless, the point is academic as the amended pleading is permissible under CPLR § 1024. The justification of equitable tolling is merely consistent with this Court's application of CPLR § 1024.

### III.     New York Criminal Procedure Law – Automatic Disclosure

As a final point, SCPD makes the terse allegation Plaintiff knew the identities of the officers but – for reasons unknown – failed to add their names until after the statute of limitations expired. The basis of the allegation is that Plaintiff refers to criminal complaints in his August 2021 letter, and New York Criminal Procedure Law ("CPL") § 245.20 mandates automatic disclosure of arresting paperwork, including the arresting officers' names. True, CPL § 245.20 triggers automatic disclosures. *See People v. Bay*, 41 N.Y.3d 200, 209 (2023). However, all charges against Plaintiff were dismissed, and SCPD fails to allege – let alone provide evidence – they complied with CPL § 245.20's automatic disclosure obligations prior to dismissal.

To support their argument, SCPD cites *Boston v. Suffolk Cnty., New York*, 326 F. Supp. 3d 1 (E.D.N.Y. 2018). There, the court held a party could not take advantage of CPLR § 1024 because the plaintiff possessed the identities of the unknown officers several years before moving to amend. *Id*. There, however, the court reached that determination because plaintiff's counsel had deposed

the unknown officers on three separate occasions and produced records with the allegedly unknown officers' names more than three years before moving to amend. *Id*. at 13. *Boston* stands in stark contrast to this case, where SCPD offers nothing more than a bare allegation that Plaintiff received the names of the officers through CPL § 245.20 for criminal charges that were dismissed.

To be sure, CPL § 245.20 requires the State to "serve upon the defendant and file with the court a certificate of compliance [that the State] has disclosed and made available all known material and information it has obtained subject to discovery." Presumably, if such disclosure occurred, SCPD would have a copy of the certificate of compliance. The fact that it has not been presented to the Court suggests that such disclosure was not made, or at the very least, that the evidence before the Court is insufficient to bar Plaintiff from amending the Complaint.

If Plaintiff had the officers' names, why would such information be willfully omitted from the complaint, only to file a markedly contentious motion to amend after the statute of limitations expired? Moreover, in light of CPL § 245.20's comprehensive disclosure mandates, this Court is left wondering why SCPD refused to respond to Plaintiff's August 2021 letter requesting the officers' identities since Plaintiff was statutorily entitled to such information. For all these reasons, the argument against applying the relation-back doctrine is unavailing.

## CONCLUSION

In light of at least one documented attempt by Plaintiff to obtain the names of the officers who arrested him well before the expiration of the statute of limitations, particularly given that he was acting pro se and incarcerated during the middle of a global pandemic at the time, the Court finds that the relation-back doctrine applies and the Plaintiff's claims are not barred by the Statute of Limitations. Accordingly, Plaintiff's Motion to Amend the Complaint is GRANTED.

**SO ORDERED.**

/s/ _____

Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
January 28, 2025